John M. PETROWSKI

v.

**HAWKEYE–SECURITY INSURANCE COMPANY.**

No. 11335.

United States Court of Appeals Seventh Circuit.

Aug. 2, 1955.

Rehearing Denied Sept. 7, 1955.

Writ of Certiorari Granted Dec. 5, 1955.

See 76 S.Ct. 197.

Schnackenberg, Circuit Judge, dissented.

Victor M. Harding, Whyte, Hirschboeck & Minahan, Milwaukee, Wis., John G. Vergeront, Milwaukee, Wis., of counsel, for appellant.

Richard P. Tinkham, David A. Gorman, Ronald D. Keberle, Herbert Terwilliger, Wausau, Wis., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Hawkeye-Security Insurance Company, defendant here, is an Iowa insurance company with its principal office at Des Moines. It is not licensed in the State of Wisconsin. Francis Meehan, not a party to this lawsuit applied to his cousin Cyril Wiedner, May 7, 1951, as one of Hawkeye's agents for automobile liability insurance on his (Meehan's) Chevrolet. Wiedner and Meehan were Iowa residents and the vehicle was then stored at Meehan's home in Iowa. Just prior to that application Meehan entered military service, and told Wiedner that he (Meehan) planned taking his Chevrolet to his assignment at Chanute Air Force Base, near Rantoul, Illinois. When Meehan was a civilian Hawkeye had written coverage, but that policy expired. "The Hawkeye agent (Wiedner) told Meehan that the Company was not anxious to write automobile liability policies for servicemen, but he felt the Company would accept Meehan again if he agreed that the insurance should not be in effect when the car was driven by another

serviceman unless Meehan was also in the car." [1] Hawkeye was licensed to do business in Illinois, where it maintained a claims office, and applied its Illinois premium rate to the policy in issue. Wiedner personally recommended Meehan as an "A–1" risk to defendant. Meehan signed the following typewritten statement, dated May 7, 1951, prepared on a form captioned "Wiedner Agency:"

"I understand and agree that the insurance on my car is not in force when driven by any other member of the Armed Forces unless I am also in the car."

Without that foregoing assent Wiedner could not recommend Meehan because Hawkeye's underwriters concluded that the lending of cars by and to fellow servicemen entailed additional hazards. Consequently, in the opinion of defendant's underwriters, this endorsement (Exhibit 3) equalized the risk to the civilian rate:

"Special Endorsement

It is agreed that such insurance as is afforded by this policy shall be of no force or effect while the described automobile is being operated by any member of the Armed Forces *other than* (1) the Named Insured, or (2) a member of the Armed Forces who is a member of the Named Insured's immediate family.

This endorsement is subject to all the terms, conditions and exclusions of the policy and of forms and endorsements attached thereto which are not inconsistent herewith.

This endorsement shall take effect on the 7th day of May, 1951 at 12:01 A.M. and shall terminate with this policy.

This endorsement, when countersigned by a duly authorized agent of the Company and attached to Pol-

icy No. A33603, issued to Francis Meehan shall be valid and form a part of said policy.

> Hawkeye-Security Insurance
> Company,
> A. R. Nelson,
> President.

Countersigned at Waukon, Iowa this 14th day of May, 1951.

------------------------
Authorized Agent."

(Italics supplied.)

After Wiedner forwarded Meehan's application, accompanied by the aforesaid assent, defendant issued a policy of automobile liability insurance consisting of three parts: (i) Policy No. A33603, (ii) Declarations and, (iii) the foregoing Special Endorsement. These documents were forwarded by Hawkeye to its agent Wiedner, who executed that part of the policy captioned "Declarations," but did not sign the "Special Endorsement." However, that endorsement was signed by defendant's president. Meehan received these three documents at Rantoul, Illinois from Wiedner. When anybody asked Meehan for the use of his automobile he would tell them " * * * it wasn't covered, that there was a restrictive endorsement on the policy, and that * * * (he) * * * didn't want them to drive it." [2] Meehan and another serviceman, Gelhar, stationed at Chanute Air Force Base, agreed to the joint purchase of a 1949 Pontiac from a Rantoul automobile dealer on July 9, 1951. Meehan and Gelhar further agreed to and did share equally all expenses in maintaining, operating and insuring the Pontiac, including the premium on the liability policy underlying this appeal. "They owned the car jointly though title was placed in Meehan's name alone because Gelhar was then only twenty years of age." [3] The next day Meehan wrote [4] his cousin,

---

1. T.R. 198; Appellant's brief, 2.
2. T.R. 243.
3. T.R. 83–87, 263–264; Appellee's brief, 3.
4. Exhibit 33–A is an envelope postmarked

Rantoul, Ill., July 11, 1951, 10:30 A.M. addressed: "Mr. Steve Wiedner Waukon, Iowa." The return address shows the name, rank and serial number of F. J. Meehan, Chanute A. F. B. Ill.

Hawkeye's agent in Waukon, Iowa, advising him that the Pontiac had been purchased and specifically inquiring: "Say how about making new policy so another kid can drive it besides myself. He has an interest in the car. His name is Francis R. Gelhar, also an instructor in Electrics Branch here at the base." This communication allegedly evoked the following reconstructed letter, July 12, 1951, from Wiedner:

> "Corporal Francis Meehan
> 3356 Student Training Squadron
> Chanute Air Base
> Rantoul, Illinois
>
> Dear Buddy:
>
> I have to have a motor and serial number of the car—also whether it is a 2 door or 4 door.
>
> The Hawkeye Insurance Company would not be interested in keeping the policy in force on your car if another person had an interest in the car. If your friend Gelhar is to have an interest in the car, you should secure other insurance from an insurance man near Chanute field and send back the policy you got from me for cancellation." [5]

We qualify that letter marked (Exhibit 34) because in finding of fact numbered 7, the district judge stated:

> "While the defense contends that on receipt of Meehan's letter by Wiedner advising him of the joint ownership of the Pontiac he immediately wrote Meehan that if Gelhar was to have an interest in the Pontiac, the policy should be sent back for cancellation * * * Wiedner was unable to produce the original or copy of his alleged letter to Meehan, but did offer a reconstructed version of what he recalled the letter contained. Meehan's testimony, as well as Wiedner's, as to this alleged communication was conflicting, unreli-

able and very unsatisfactory, and the court finds that no such communication was had between Meehan and Wiedner at that time. The policy was not returned for cancellation and no further inquiry or demand for its return was made on Meehan by Wiedner or the defendant. Defendant never offered or made a refund to Meehan for the premium paid."

But it does appear from Exhibit 35 that on July 11, 1951 Wiedner sent a request for endorsement to Hawkeye, viz.: "Please endorse for following car; 49 Pontiac Sedan Coupe M #P6 RH11615 Model 6R List H, possession 7/10/51, used * * *" This was received by Hawkeye at Des Moines, 8:50 A. M., Monday, July 16 and a Change of Car Endorsement (Exhibit 4), effective July 11, 1951, was forwarded to Wiedner, who countersigned it July 17, 1951. This endorsement, for Meehan's policy A33603, clearly described the Pontiac and was transmitted by Wiedner to Meehan. No further correspondence between Meehan and Wiedner appears of record.

In September, 1951 Gelhar on furlough took the Pontiac to his home near Wausau, Wisconsin, and Meehan remained at the Air Force Base. On September 27, 1951, while operating the Pontiac, Gelhar was involved in a collision with another automobile, as a result of which actions were commenced against him by several persons injured in that episode. When defense of these tort claims were tendered to Hawkeye it declined on the ground that Gelhar was excluded from coverage under the policy's terms. Judgments against Gelhar totalled $45,-619.03 in addition to which he incurred $2,490.22 for attorneys' fees.

Grounding their complaint on these judgments in tort, and diversity of citi-

5. When Weidner was under direct examination he related making a statement to defendant's local attorneys, and testified: "Q. And at their request, did you prepare the constructed copy of the letter? A. Yes, sir. "Q. And is Exhibit 34 your preparation of that reconstruction? A. Yes, sir." (T.R. 205.)

zenship, Gelhar and the injured persons filed suit, August 26, 1953, against Hawkeye in the United States District Court for the Western District of Wisconsin. After denying, on October 8, 1953, defendant's motion to: (i) quash the return of service and, (ii) dismiss the action, the district court proceeded to hear the merits, without a jury. Plaintiffs amended their complaint and defendant filed a counterclaim. Then the proceedings below culminated in judgments against Hawkeye and Gelhar for $20,595.69 and $1,415.93, respectively. Hawkeye asks us to review the district judge's refusal to quash service and dismiss this action and has also appealed the foregoing money judgment. Findings of fact and conclusions of law were made by the trial judge.

One other aspect of the proceedings below requires notice. Plaintiffs and defendant, through their attorneys, executed a stipulation for judgment on the claim of Ruth Petrowski, wife of John M. Petrowski, a plaintiff, under which it was agreed that Ruth's claim was valued at $12,500. That stipulation is shortly explained by its paragraph numbered 3 (T.R. 43):

"That Ruth Petrowski is being joined as a party to the above entitled action at the request of the defendant in order that a determination in this action of the issue of insurance coverage by the defendant upon the car driver by Francis Gelhar at the time and place of the said accident will be binding upon all of the persons having any claim or cause of action whatsoever arising out of the said automobile accident and will likewise be binding upon the defendant, and in order that the determination of the said issue in this action will be *res judicata* between all of the persons having any claim or cause of action arising out of the said automobile accident and the defendant herein."

Paragraph one, of that stipulation, on which a separate judgment was entered in favor of Ruth Petrowski against Francis Gelhar in the sum of $12,500, provides:

"That each of the parties to this stipulation voluntarily submits to the jurisdiction of the above entitled Court without service of process herein, the same as if personal service had been obtained by each against the other."

As part of its counterclaim, defendant sought to restrain certain plaintiffs from instituting any other actions against Hawkeye or Gelhar. Moreover, Hawkeye prayed for a declaration that none of the plaintiffs were entitled to recover under the policy.

Looking at all the findings of fact and conclusions of law filed below, we are compelled to conclude that the district court interpreted defendant's resolution and power of attorney as leaving Hawkeye amenable and vulnerable to process whatever were the jurisdictional facts. Having decided that Hawkeye was within the court's jurisdiction all that remained was to invalidate the restrictive endorsement on the grounds that Hawkeye had also assented that its policies "are varied to comply with the" laws of Wisconsin, where such endorsements are prohibited. But a preliminary jurisdictional question, inextricably woven into other aspects of the case, crystallized by defendant's motion to quash the process confronts us.

Hawkeye filed a resolution, with the proper Wisconsin officials, authorizing its appropriate officers to execute a power of attorney constituting and appointing the Commissioner of Motor Vehicle Department of the State of Wisconsin its attorney in that State "to accept service on its behalf of notice or process in any action arising out of a (prior) (subsequent) motor vehicle accident in the State of Wisconsin under 85.09 of the Wisconsin Statutes." [6] Two other

6. Exhibit 7; The substance of this resolution also appears in finding of fact numbered 13 (T.R. 294).

clauses in that resolution warrant quotation:

"2. That in all cases *wherein a certificate is filed* under said law by Hawkeye-Security Insurance Company, the insurance policy, declared by said certificate, *shall be deemed to be varied to comply with the laws of Wisconsin.*

"3. That Hawkeye-Security Insurance Company will accept as final and binding any final judgment of any court of competent jurisdiction in the State of Wisconsin duly rendered in any action arising out of a motor vehicle accident in the State of Wisconsin." (Italics supplied.)

Pursuant to that duly authenticated resolution, the following power of attorney was filed with the Wisconsin authorities prior to the date of Gelhar's accident:

"State of Wisconsin
Motor Vehicle Department
Madison, Wisconsin

Power of Attorney Under 85.09
To the Commissioner of Motor Vehicles,
Madison, Wisconsin.

Name of Insurer:

1. The Hawkeye-Security Insurance Co. hereby applies to have its (safety) (financial) responsibility notices of insurance recognized as evidence of insurance of non-registrants in Wisconsin.

Certificates:

2. That the governing executive authority has duly adopted a resolution providing that its policies are varied to comply with the laws of this state relating to the terms of motor vehicle liability policies issued therein under 85.09 of the Wisconsin Statutes.

&ast;   &ast;   &ast;   &ast;   &ast;

When organized and where transacting business:

3. The insurer was incorporated or organized in State of Iowa on the 22nd day of September 1919, as a stock company (class of insurer, i. e., joint stock, mutual, reciprocal exchange, etc.) and is authorized to transact motor vehicle liability insurance under the insurance laws of Wyoming, Colorado, New Mexico, Arizona, South Dakota, Utah, Idaho, Nebraska, Kansas, Missouri, Texas, Indiana, Illinois, New York, Pennsylvania, Ohio, Oklahoma, Minnesota, Michigan, Montana, North Dakota, Texas.

List of states and countries where
licensed.

Address:

4. The full address of the head or principal office of the insurer is 1017 Walnut Street, Des Moines, Iowa.

Power of Attorney:

5. The insurer hereby appoints the Commissioner of Motor Vehicles for the State of Wisconsin as its Attorney in fact to accept service of notice or process on its behalf and for its insured in any action or proceedings arising out of a motor vehicle accident in Wisconsin occurring (prior) (subsequent) to the date hereof and agrees that such service shall be legal and binding upon the insurer and this appointment shall remain in force and not be revoked in respect of actions or proceedings arising out of motor vehicle accidents in Wisconsin occurring prior to date of revocation. The insurer will give the Commissioner of Motor Vehicles at least ninety days notice of its intention to revoke the power of attorney and revocation thereof shall not be effective until the expiration of said period of ninety days.

Undertaking to appear:

6. The insurer hereby undertakes to appear in any action or proceedings described in the foregoing power of which it has knowledge.

Accept Judgments Final:

7. The insurer hereby agrees to accept as final and binding any final judgment duly rendered in any action arising out of a motor vehicle accident in any court of competent jurisdiction in this state.

8. The insurer will notify you in writing as soon as it has knowledge of any action arising out of a motor vehicle accident in Wisconsin to which one of its insured who is non-registrant of Wisconsin is a party.

9. Additional information ------

In Witness Whereof, the insurer has caused its corporate seal (if any) to be hereunto affixed and caused this application to be executed in accordance with the laws of the State or Country in which it was incorporated or organized by its officers thereunto duly authorized at the Home Office of Hawkeye-Security Insurance Company in the State of Iowa this 21st day of November, 1950.

HAWKEYE-SECURITY INSURANCE
    COMPANY,
PAUL RISHER,

(SEAL)

Signature
Vice President
Title or Office

K. L. CRITTENDEN,

Signature
Secretary
Title or Office

STATE OR COUNTY OF IOWA,⎫
COUNTY OF POLK.          ⎬ ss.
                         ⎭

On this 21st day of November, 1950, before me appeared Paul Risher and K. L. Crittenden, to me personally known, who being by me duly sworn did say that they are respectively Vice President and Secretary of Hawkeye-Security Ins. Co. Insurer; that the seal (if any) affixed to the foregoing instrument is the corporate seal of said insurer; and that said instrument was executed in behalf of said insurer by au-

thority of its governing executive authority and in accordance with the laws of the State or Country, in which it was incorporated or organized and said Vice President and said Secretary acknowledged the said instrument to be the free act and deed of the insurer.

--------------
*Notary Public.*
My commission expires --------"

There is no dispute concerning either the authenticity or filing of the foregoing documents, but there is presented a question of interpretation. For despite what first appears as clear language appointing the Wisconsin Commissioner as attorney to accept service, Hawkeye interposed a motion to quash the process by which the instant proceeding was commenced. Hawkeye, in substance, asserted that: (i) the district court had no jurisdiction over the defendant, and (ii) "such defendant has not been properly served with process in this action since the defendant is an Iowa corporation and was not and is not subject to the service of process within the Western District of Wisconsin except pursuant to a Power of Attorney filed with the Commissioner of the Motor Vehicle Department of the State of Wisconsin * * * that such Power of Attorney does not authorize the Commissioner to accept process for the defendant in the above entitled action."

After setting out the pertinent portions of defendant's power of attorney, the district judge made these findings:[7]

"That by filing said resolution and power of attorney, defendant agreed that its auto policies should comply with and be governed by all the applicable Statutes of Wisconsin relating to auto insurance policies, in the event the auto it insured became involved in an accident in Wisconsin, and defendant is now estopped to deny that the said Wisconsin Statutes governing and controlling the terms and conditions of auto

7.  T.R. 295.

liability insurance policies became a part of the policy involved herein as to the automobile accident in question.

"That the defendant's policy referred to herein was amended when isued so as to comply with all of the said Wisconsin Statutes.

"That the service of the process in this action upon the Commissioner of Motor Vehicles for Wisconsin, pursuant to said power of attorney, was valid and this court has jurisdiction over the defendants."

This is an appropriate juncture to recapitulate several significant facts readily established by our canvass of the record:

1. Policy A33603, originally issued to Meehan, was written in Iowa, not Wisconsin.

2. There is absent any evidence demonstrating that the policy had been certified as proof of financial responsibility under Wisconsin statutes.

3. Hawkeye is an Illinois licensee; a non-licensed insurer in Wisconsin.

4. Hawkeye is an Iowa insurance company.

5. Meehan, who remained in Illinois, gave Gelhar permission to use their jointly-owned Pontiac.

6. Wisconsin was the site of Gelhar's accident.

7. Gelhar's home was near Wausau, Wisconsin and he was stationed at Chanute Air Force Base, Rantoul, Illinois when the accident occurred.

■■ Hawkeye refrained from certifying its policy under Wisconsin Safety and Financial Responsibility Law because the company contends that Gelhar's operation of the Pontiac was an excluded risk. Its resolution, already quoted, provides *inter alia* " * * * in all cases *wherein a certificate is filed* * * * the insurance policy, *declared by said certificate,* shall be deemed to be varied to comply with the laws of Wisconsin * * *."

Clearly without such a certificate having been filed policy A33603 could not be varied to comply with Wisconsin laws so as to strike down the restrictive endorsement. We think the resolution and power of attorney must be read together since defendant's Board of Directors authorized only that which their resolution embodies. But we say that resolution and power of attorney are without vitality until such time as the carrier activates them with a certificate of insurance. Wis.Stats.1953, 85.09(17) et seq., and 85.09(20). Or, it might be also said that policy A33603 did not become a motor vehicle liability policy since it had never been certified as proof of financial responsibility under Wisconsin statutes. Hill v. Standard Mutual Casualty Co., 7 Cir., 1940, 110 F.2d 1001; State Comp. Ins. Fund v. Bankers Indemnity Ins. Co., 9 Cir., 1939, 106 F.2d 368. The substituted service was ineffective because Hawkeye's certificate is a jurisdictional element in this instance.

Section 85.09 of Wisconsin Statutes 1953 embraces two captions, i. e., "Safety Responsibility Law" § 85.09(5) to (16) (c) and "Financial Responsibility Law" § 85.09(17) to (31m). However, plaintiffs in this complaint spelled out contents of § 321A, Iowa Code 1950, I.C. A., concerning the Iowa Financial Responsibility Law—these provisions are counterparts of the Wisconsin statute. As we read the Wisconsin statute it appears that their thrust strikes at owners and operators of vehicles. A driver, holding a policy with a non-licensed insurance company can protect himself from the impact of either Safety or Financial Responsibility Law provisions only if his out-of-state insurer qualifies and certifies under those legislative clauses. Yet we find nothing in 85.09 conferring jurisdiction over defendant, by substituted service in the absence of a certification of policy A33603. Hawkeye's resolution and power of attorney contains no mention of any specific policy much less any itemization of the one involved. Morris & Co. v. Skandinavia Ins. Co., 1929, 279 U.S. 405, 49 S.Ct. 360, 73 L.

·Ed. 762; General American Life Ins. · Co. v. Carter, 1944, 222 Ind. 557, 54 N. E.2d 944. Of course, Hawkeye's non-certification stems from its position that : the automobile driven by Gelhar was not · covered by policy A33603 since there was a specific provision that the policy · "shall be of no force or effect while the · described automobile is being operated by any member of the Armed Forces"— viz., Gelhar. But jurisdiction cannot be obtained over Hawkeye by merely invalidating that restrictive endorsement.

Without certification of policy A33603, by Hawkeye, its power of attorney alone, was insufficient and dormant, and this state of affairs nullified substituted service on the Wisconsin Commissioner. For these reasons Hawkeye was not within the jurisdiction of the district court and it was error to overrule defendant's motion to quash the process. In its answer, we note in passing, Hawkeye expressly denied that its power of attorney appointed the Commissioner as its agent for the service of process in any and all instances.

Our holding here pivots on the jurisdictional question. Nothing in Watson v. Employers Liability Assur. Corp., 1954, 348 U.S. 66, 75 S.Ct. 166, freely cited by plaintiffs, collides with the views expressed in this case. For there the Louisiana code provisions were applicable to all insurance contracts. Section 204.30 (3), Wisconsin Statutes 1953, relied up- · on by plaintiffs, is delimited by these · words: "No such policy shall be issued or delivered *in this state* *. * *.*" Moreover, Olander v. Klapprote, 1953, 263 Wis. 463, 57 N.W.2d 734, 735, and Schneider v. Depies, 1954, 266 Wis. 43, 62 N.W.2d 431, are, accordingly, inapplicable to the issues before us though they hold that section 204.30(3) "denies to the insurer the right to exclude from its policy provisions of indemnity to the person responsible for the operation of the automobile." Policy A33603 was neither issued nor delivered in Wisconsin.

Various points asserted by plaintiffs in this appeal are simply facets of a basic attempt to attack jurisdiction and once argued then, quite understandably plaintiffs attempt to eradicate the restrictive endorsement. But this circular reasoning fails to supply the requisite certi·· ficate of insurance.

So tenuous are plaintiffs' contentions resting on waiver and estoppel that a detailed disposition of them is unnecessary. Since our decision hinges upon lack of jurisdiction there is no need to discuss other points urged by plaintiffs.

The judgments and orders appealed, and this cause, is reversed and remanded to the District Court with directions to sustain defendant's motion to quash the return of service of summons on it and to dismiss the action filed against Hawkeye-Security Insurance Company.

Reversed and remanded with directions.

SCHNACKENBERG, Circuit Judge, dissenting.

The majority opinion, in reversing the judgment of the district court, sustains the defendant's attack upon the jurisdiction of that court over the person of defendant.[1] However, the record shows that, according to well established principles of waiver, defendant on March 18, 1954, waived its theretofore asserted objection to the district court's jurisdiction of its person. This was prior to the entry of the judgment appealed from.[2] Accordingly the jurisdictional question is not before this court for decision.

The record of this case shows that the judgment, which the majority opinion now reverses and remands, was entered after the following proceedings had taken place in the district court case.

John M. Petrowski, Grace Ringle and Francis Gelhar, filed a complaint against Hawkeye on August 26, 1953, demanding judgment against defendant and in favor of John M. Petrowski and Grace Ringle,

---

I. No question as to jurisdiction of the subject matter is involved.

2. October 25, 1954.

respectively, for the amounts of judgments which they had theretofore obtained against Francis Gelhar resulting from injuries sustained in a collision between an automobile driven by Gelhar and another automobile, and demanding a judgment in favor of Francis Gelhar and against defendant declaring that defendant's policy of insurance provided full coverage to Gelhar as an additional insured, as well as a judgment in favor of Gelhar for attorneys' fees and expenses incurred in defending the actions of the other two plaintiffs against him. On September 16, 1953, defendant filed a motion to quash the service of summons on it on the ground that the court did not have jurisdiction over the person of defendant and on other grounds. That motion was denied on October 8, 1953, and on October 28, 1953, defendant filed an answer to the complaint, which *inter alia* reasserted its motion to dismiss. On February 8, 1954, defendant filed a counterclaim.

On March 18, 1954, a stipulation was filed, agreeing that the complaint be amended by joining Herlene Gelhar and her guardian *ad litem,* as well as Ruth Petrowski, as party plaintiffs in the action and that suitable amendments of the complaint be made. It was further agreed that defendant's answer be amended to include the denial of the new allegations.

On the same day another stipulation was filed *in the same case,* signed by Ruth Petrowski and her attorney, Francis Gelhar, and his attorney, as well as defendant and its attorney. It reads:

"It Is Hereby Stipulated by and between Ruth Petrowski, Francis Gelhar and Hawkeye-Security Insurance Company, a corporation, as follows:

1. That each of the parties to this stipulation voluntarily submits to the jurisdiction of the above entitled Court without service of process herein, the same as if personal service had been obtained by each against the other.

2. That Ruth Petrowski has a claim and cause of action against Francis Gelhar in her own behalf for her damages resulting from bodily injuries sustained by her as a result of an automobile accident which occurred on September 27, 1951 on Highway 29 in Marathon County, Wisconsin, which claim and cause of action is above and beyond and in addition to the judgment or judgments obtained by John M. Petrowski in the Circuit Court in and for Marathon County, Wisconsin on the 10th day of June, 1953, marked Exhibit D and attached to plaintiffs' original complaint in the above entitled action.

3. That Ruth Petrowski is being joined as a party to the above entitled action *at the request of the defendant* in order that a determination in this action of the issue of insurance coverage by the defendant upon the car driven by Francis Gelhar at the time and place of the said accident will be binding upon *all of the persons having any claim or cause of action whatsoever arising out of the said automobile accident and will likewise be binding upon the defendant,* and in order that the determination of the said issue in this action will be *res judicata between all of the persons having any claim or cause of action arising out of the said automobile accident and the defendant herein.*

4. That the defendant, Hawkeye-Security Insurance Company, Francis Gelhar and Ruth Petrowski stipulate and agree that the value of Ruth Petrowski's claim and cause of action against Francis Gelhar is $12,500 above and beyond the previous judgment obtained by John M. Petrowski under date of June 10, 1953.

5. That the Court may forthwith, without further notice and without costs to any party enter judgment in favor of Ruth Petrow-

ski and against Francis Gelhar in the sum of $12,500, which judgment shall be in full satisfaction of the said claim and cause of action of Ruth Petrowski, personally, against Francis Gelhar as a result of the said automobile accident of September 27, 1951.

6. That it is expressly agreed by and between the parties to this stipulation and agreement that the entry of judgment in conformance herewith will not and does not constitute a waiver of any defense which the defendant, Hawkeye-Security Insurance Company, may have *on the issue of insurance coverage and its liability, if any, under any policy of automobile liability insurance upon the automobile operated by Francis Gelhar at the time and place of the said automobile accident* of September 27, 1951; that the defendant, Hawkeye-Security Insurance Company, does not admit any liability to Ruth Petrowski, Francis Gelhar or any of the other parties to this action by reason of any policy of automobile liability insurance issued by the defendant or by reason of the said accident; that this stipulation is entered into between the parties hereto *so that the value of all claims and causes of action of all persons* arising out of the said automobile accident may be determined and established by final judgment and in order that *all issues of insurance coverage as to all persons having a claim or cause of action arising out of the said accident may be determined in these proceedings and action now pending* in the above entitled Court to avoid multiplicity of suits and to expedite the trial of the above entitled action upon the said issues of insurance coverage."

Italics are supplied for emphasis.

On the same day the court entered judgment for Ruth Petrowski against Francis Gelhar for $12,500.

Thereafter, following a trial at which the evidence of the respective parties was received, the court made findings of fact and conclusions of law and a judgment against defendant was entered on October 25, 1954. This judgment awarded to the various plaintiffs the amounts which they had heretofore recovered against Francis Gelhar, with interest, and also $2,490.22 for Gelhar's attorney's fees, as well as plaintiffs' costs.

Having raised by motion and answer its objection to the jurisdiction of the district court over its person, the defendant thereafter saw fit to join in the second stipulation filed March 18, 1954. By the terms thereof defendant "voluntarily" submitted to the jurisdiction of the court "without service of process herein." Said stipulation referred to Ruth Petrowski's claim and cause of action against Francis Gelhar resulting from the automobile accident on September 27, 1951, "which claim and cause of action is above and beyond and in addition to the judgment or judgments obtained by John M. Petrowski." This stipulation expressly recited that Ruth Petrowski was being joined as a party to the action "at the request of the defendant in order that a determination in this action of the issue of insurance coverage by the defendant upon the car driven by Francis Gelhar" in said accident would "be binding upon all of the persons having any claim or cause of action whatsoever arising out of the said automobile accident and will likewise be binding upon the defendant, and in order that the determination of the said issue in this action will be *res judicata* between all of the persons having any claim or cause of action arising out of the said automobile accident and the defendant herein."

While the stipulation does state the entry of judgment thereon "will not and does not constitute a waiver of any defense which the defendant, Hawkeye-Security Insurance Company, may have on the issue of insurance coverage and its

liability, if any, under any policy of automobile liability insurance upon the automobile operated by Francis Gelhar," and defendant "does not admit any liability to Ruth Petrowski, Francis Gelhar or any of the other parties to this action by reason of any policy of automobile liability insurance issued by the defendant or by reason of the said accident;" it fails in any way to save the question of the jurisdiction of the court over the person of the defendant, the stipulation expressly stating that it was "entered into between the parties hereto so that the value of all claims and causes of action of all persons arising out of the said automobile accident may be determined and established by final judgment and in order that all issues of insurance coverage as to all persons having a claim or cause of action arising out of the said accident may be determined in these proceedings and action now pending in the above entitled Court to avoid multiplicity of suits and to expedite the trial of the above entitled action upon the said issues of insurance coverage."

A judgment was thereupon entered in favor of Ruth Petrowski in accordance with the agreement to which defendant was a party. It was entered in the same case and by the same court which entered the order of October 25, 1954, from which defendant has appealed.

The advantages which defendant sought by entering into the stipulation aforesaid, it procured through the action of the court whose jurisdiction it now questions. Whether defendant, when invoking or submitting to the court's jurisdiction, as it did by this stipulation, could have excepted therefrom its right to insist that the court had no jurisdiction over the defendant's person, it is unnecessary for us to decide. The fact is that it made no such exception in the stipulation. The reservations in the stipulation cover only the issues of insurance coverage and the defendant's liability on the policy in question. Those are the issues involved in the merits of the case on this appeal and they are matters which this court should now review.

By voluntarily submitting these issues to the district court for determination as to all of the plaintiffs, including John M. Petrowski, defendant waived any right theretofore asserted by it to challenge the jurisdiction of the court over it. 21 C.J.S., Courts, § 109, p. 166.

I believe this court should proceed with a consideration of the merits of the case.